IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LARRY C. HAYES, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14−cv−0347−MJR−SCW |
| | ) | |
| JOHNSON, and | ) | |
| HARRINGTON | ) | |
| | ) | |
| Defendant. | | |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## Introduction and Procedural Background

Pro se Plaintiff Larry Hayes, currently released on probation, filed this case on February 19, 2014 alleging that his constitutional rights were violated when Defendants Johnson and Harrington carried out a campaign of retaliatory harassment against him. (Doc. 5). Specifically, the threshold order determined that Plaintiff had raised two claims against Defendants: 1) a retaliation claim against Johnson, for targeting Plaintiff for cell shakedowns, interfering with his counselor visit and job and classroom attendance, and causing Plaintiff to be fired, after Plaintiff filed grievances against him; and 2) a retaliation claim against Harrington for targeting Plaintiff for cell shakedowns and interfering with his job and classroom attendance after Plaintiff filed grievances against him. (Doc. 1). These claims were originally part of case No. 14-cv-229 and were severed pursuant to *George v. Smith*, 507 F.3d 605(7th Cir. 2007).

On January 28, 2015, Defendants filed a motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 31). No response to this motion was ever docketed. On June 10, 2015, the Court granted the Defendants' Motion for Summary Judgment, in part based on the lack of response, which the Court construed as an admission on the merits. (Doc. 39). On June 29, 2015, Plaintiff filed the present motion, stating that he had mailed his response to the summary judgment motion on February 10, 2015. (Doc. 40, p. 1). Plaintiff's motion stated that he had mailed the response along with a response in his companion case, 14-229. (Doc. 40). Plaintiff also included a copy of his original response with the motion. (Doc. 40). A review of the docket in case No. 14-229 suggested that the second response had been mailed back to Plaintiff on the erroneous assumption that Plaintiff had provided it in order to receive a file-stamped copy of the response in 14-229. Plaintiff would have therefore received a file-stamped copy of his response in this case, giving him reason to believe the response had been filed.

The undersigned construes Plaintiff's Motion as one made pursuant to Fed. R. Civ. P. 59 and Fed. R. Civ. P. 60. (Doc. 40). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation. The undersigned held a hearing on the matter on October 21, 2015. Plaintiff failed to appear. For the reasons stated below, the undersigned **RECOMMENDS** that the Motion be **DENIED**. (Doc. 40).

LEGAL STANDARDS

1. **Motion to Reconsider Pursuant to Rule 59 and/or Rule 60**

The Federal Rules of Civil Procedure do not explicitly contemplate motions to reconsider. The undersigned assumes Plaintiff is attempting to rely on Rule 59(e) or Rule 60(b). *U.S. v. Deutsch*, 981 F.2d 299, 300 (7th Cir. 1992) ("Though [Deutsch] fails to cite any rule as the basis for his motion, the fact that it challenges the merits of the district court's decision means that it must fall under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure.").

Rule 59(e) provides a basis for relief, where, as here, a party challenges the Court's application of the law to the facts of the case. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174-76 (1989)(concluding that Rule 59(e) was intended to apply to the reconsideration of matters encompassed within the merits of a judgment); *McKinney v. United States*, 2008 WL 2557470 at *2 (S.D. Ill. June 24, 2008). While Rule 59(e) permits a district court to exercise its discretion to correct its own errors, sparing the time and expense of further proceedings at the appellate level, *Divane v. Krull Elec. Co. Inc.*, 194 F.3d 845, 848 (7th Cir. 1999), "ill-founded requests for reconsideration of issues previously decided . . . needlessly take the court's attention from current matters and visit inequity upon opponents who, prevailing in an earlier proceeding, must nevertheless defend their positions again and again." *Berger v. Xerox Ret. Income Guar. Plan*, 231 F.Supp.2d 804, 820 (S.D. Ill. 2002). Typically, Rule 59(e) motions are granted upon a showing of either newly discovered evidence not previously available or evidence in the record that clearly establishes a manifest error of law or fact. *Sigsworth*

3

*v. City of Aurora, Ill.*, **487 F.3d 506, 511-12 (7th Cir. 2007);** *Romo v. Gulf Stream Coach, Inc.*, **250 F.3d 1119, 1121 n.3 (7th Cir. 2001)**. "'[M]anifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, **224 F.3d 601, 606 (7th Cir. 2000)(internal citations omitted)**. A proper motion to reconsider does more than take umbrage and restate the arguments that were initially rejected during the summary judgment phase. *County of McHenry v. Ins. Co. of the West*, **438 F.3d 813, 819 (7th Cir. 2006);** *Ahmed v. Ashcroft*, **388 F.3d 247, 249 (7th Cir. 2004);** *Oto*, **224 F.3d at 606**.

Rule 60(b) contains a more exacting standard than Rule 59(e), although it permits relief from a judgment for a number of reasons including mistake or "any other reason justifying relief from the operation of judgment." **Fed. R. Civ. P. 60(b)**. However, in contrast to Rule 59(e), legal error is not an appropriate ground for relief under Rule 60(b). *Gleash v. Yuswak*, **308 F.3d 758, 761 (7th Cir. 2002) ("A contention that the judge erred with respect to the materials in the record is not within Rule 60(b)'s scope, else it would be impossible to enforce time limits for appeal.")**. Relief under Rule 60(b) is an extraordinary remedy and is only granted in exceptional circumstances. *United States v. 8136 S. Dobson St., Chicago Ill.*, **125 F.3d 1076, 1082 (7th Cir. 1997)**.

   2.   **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact

and the movant is entitled judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (citing** FED. R. CIV. P. 56(a)**).** The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986).**

When a motion for summary judgment is made with respect to *Pavey*, the first step in the sequence, as set out by Judge Posner, is for the judge to hold a hearing on the issue of exhaustion. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** A case can only move onto the merits after such exhaustion issues have been decided. *Id.* When "factual issues relating to the defense of failure to exhaust administrative remedies," are up for consideration, these will be decided by a judge. *Id.* **at 740-41.**

3. **PLRA's Exhaustion Requirement**

Suits brought by prisoners are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997e. PLRA requires a prisoner to first exhaust all administrative remedies available before bringing an action concerning prison conditions. **42 U.S.C. § 1997e(a).** The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. *Jones v. Bock*, **549 U.S. 199, 218 (2007).** Unexhausted claims may not be brought to court. *Jones*, **549 U.S. at 211 (citing** *Porter v. Nussell*, **534 U.S. 516, 524 (2002)).**

The Seventh Circuit requires strict compliance in regards to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court will not consider the grievance. *Pavey*, **663 F.3d at 903.**

The purpose of the exhaustion requirement is two-fold. *McCarthy v. Madigan*, **503 U.S. 140, 145 (1992).** First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524;** *see Booth v. Churner*, **532 U.S. 731, 737 (2001) (noting that PLRA's requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait until he has completed the established process and may not file in anticipation that administrative remedies will soon be exhausted. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C § 1997e(a));** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted while the suit is pending. *Perez*, **182 F.3d at 535.**

4. **Exhaustion Requirement under Illinois Law**

6

Inmates confined in the Illinois Department of Corrections must adhere to the Department's Grievance Procedures for Offenders in order to properly exhaust claims; anything less is a failure to exhaust. **20 Ill. Admin. Code § 504.810.** The prisoner must first speak with their Counselor about the issues they raise, and if the dispute is not resolved, the grievance must be filed within sixty days of the events or occurrence with the Grievance Officer. **20 Ill. Admin. Code § 504.810(a).** The grievance must:

> Contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** The grievance officer must then review the grievance and report findings and recommendations to the Chief Administrative Officer ("Warden"). **20 Ill. Adm. Code § 504.830(d)**. The prisoner then has the opportunity to review the Warden's response, and if he is unsatisfied, he may appeal to the Director through the Administrative Review Board ("ARB") within 30 days of the Warden's response. **20 Ill. Adm. Code § 504.830(d); 20 Ill. Adm. Code § 504.850**. The ARB is then required to provide a written report to the Director of its recommendation on the grievance and the Director "shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.850(e), (f).**

Alternatively, a prisoner "may request a grievance by handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer." **20 Ill. Adm. Code § 504.840**.  The CAO must make a determination whether the grievance shall be handled on an emergency basis.  **20 Ill. Adm. Code § 504.840**.  If so, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." **20 Ill. Adm. Code § 504.840**.  Once the CAO has informed the grieving inmate of its decision, the inmate may then appeal that decision to the Administrative Review Board ("ARB") on an expedited basis.  **20 Ill. Admin. Code § 504.850(g)**.  A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB.  **20 Ill. Adm. Code § 504.870**.  Those circumstances include grievances addressing 1) placement in protective custody; 2) involuntary administration of psychotropic medication; 3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and 4) all other issues, with the exception of personal property issues, that occurred at a previous institution.  *Id.*

## ANALYSIS

The initial failure to consider Plaintiff's response on summary judgment may entitle Plaintiff to some relief because the error was a mistake of the Court's and it would suit the purpose of Rule 59(e) to correct that error here without requiring Plaintiff to file an appeal.  However, unlike other summary judgment motions, under the *Pavey* line of cases, a court considering the issue of exhaustion of administrative

8

remedies may hold a hearing to resolve credibility issues. Plaintiff's Motion for Reconsideration includes his original response. (Doc. 40). To properly reconsider the Court's prior order addressing exhaustion, the undersigned must consider whether the response changes the Court's analysis in that order. That response raises issues that turn on whether Plaintiff is credible, thus requiring the undersigned to hold a hearing to make that determination. (Doc. 40).

The Response states that Plaintiff attempted to exhaust his remedies but the grievance process was unavailable to him because his counselor never returned the grievances. (Doc. 40, p. 8-9). Plaintiff further alleged that he sent grievances on the failure to respond, which also got no replies. (Doc. 40, p. 8-9). As exhibits to his response, Plaintiff attached a grievance dated November 28, 2013, which has a counselor's response dated May 28, 2014 denying it for being out of time. (Doc. 40, p. 15). Plaintiff claims he gave it to Engler that same day, with no response. (Doc. 40, p. 15). Plaintiff submitted another grievance dated October 20, 2013. (Doc. 40, p. 30). This grievance has a counselor's response dated November 13, 2013; there is no indication that the grievance officer ever received it. (Doc. 40, p. 30). Plaintiff also submitted a grievance with the dates scratched out from December 2013. (Doc. 40, p. 36). That grievance contains a response from Engler dated December 9, 2013, stating that the grievance will be forwarded to the grievance officer. (Doc. 40, p. 36). There are no marks on the grievance indicating that it underwent further processing. (Doc. 40, p. 36).

These grievances and Plaintiff's statement that they were never returned to him create a credibility issue on which the Court must hold a hearing. If Plaintiff

testified to these facts, and the undersigned found him credible, the undersigned would recommend that the case proceed. However, Plaintiff failed to attend the hearing on this matter on October 24, 2015. Plaintiff did not put any sworn testimony on the record regarding the allegations in his Motion to Reconsider. For that reason, the situation is essentially the same as when the Court first considered the summary judgment motion on the issue of exhaustion of administrative remedies. As defense pointed out in the hearing, Plaintiff's claim is that the counselor failed to respond, yet all three grievances have counselor's responses. Plaintiff's Response does not indicate when he submitted any of the grievances to the grievance. The grievances themselves are written on and often have internally inconsistent or illegible dates. In the absence of Plaintiff's testimony explaining these discrepancies, and the opportunity to assess his credibility, the undersigned finds that Plaintiff has failed to show any mistake in the Court's earlier order dismissing this case.

Additionally, the circumstances suggest that Plaintiff is no longer interested in prosecuting his pending motion. Plaintiff filed a notice of change of address on September 21, 2015. (Doc. 41). Less than two weeks later, the undersigned noticed Plaintiff's Motion for a hearing. (Doc. 42). That notice was sent to Plaintiff at his newly updated address. (Doc. 42). The notice was not returned by the post office as undeliverable. Moreover, the Notice specifically warned Plaintiff that attendance at the hearing was mandatory and failure to appear could result in dismissal. Plaintiff failed to appear, and has not contacted the Court regarding this case since filing his Notice of

Change of Address. Plaintiff's conduct suggests that he no longer wishes to proceed with the issues raised by this motion.

## CONCLUSION

For all of the above reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Reconsideration be **DENIED**. (Doc. 40). Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). **Objections to this Report and Recommendation must be filed on or before November 13, 2015.** *See* FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).


    IT IS SO ORDERED

    DATED: October 27, 2015                          */s/ Stephen C. Williams*
                                                                   **STEPHEN C. WILLIAMS**
                                                                    United States Magistrate Judge